RUSSELL LAW GROUP
Dennis Russell, Esq. (SBN: 118253)
Email: lawamerica@gmail.com
9595 Wilshire Boulevard Suite 900
Beverly Hills CA 90212
Tel: 877-525-1579
Fax: 888-361-3584

Attorneys for Plaintiffs LIEM K. NGUYEN,
CASSANDRA ELLIOTT, BRYAN NGUYEN, and
WILSON NAVARRO

# UNTED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| LIEM K. NGUYEN, an individual; CASSANDRA ELLIOTT, an individual; BRYAN NGUYEN, an individual; and WILSON NAVARRO, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BUENA PARK, a California municipal corporation; ADRIA M. JIMENEZ, an individual, in her official capacity; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR VIOLATION OF:** <br><br> 1. **42 U.S.C. § 1983 (EQUAL PROTECTION);** <br><br> 2. **CALIFORNIA CONSTITUTION, ART. I, § 7 (EQUAL PROTECTION);** <br><br> 3. **42 U.S.C. § 1983 (DUE PROCESS);** <br><br> 4. **CALIFORNIA CONSTITUTION, ART. I, § 7 (DUE PROCESS);** <br><br> 5. **CALIFORNIA CIVIL CODE § 52.1;** <br><br> 6. **42 U.S.C. § 1983 (IMPAIRMENT OF EXISTING CONTRACTS); and** <br><br> 7. **42 U.S.C. § 1983 (EXCESSIVE FINES)** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs    LIEM    K.    NGUYEN,    CASSANDRA    ELLIOTT,    BRYAN

NGUYEN, and WILSON NAVARRO (collectively, "Plaintiffs") allege as follows:

## NATURE OF THE ACTION

1.    With the rise in the last few years of AirBnB and other listing services for short-term real estate rentals, the City of Buena Park ("Buena Park") has recently sought to regulate short-term rentals of homes or portions of homes in residential areas ("Short-Term Residential Rentals").  Buena Park has sought to do this despite provisions of the Buena Park Municipal Code allowing for such short-term rentals.  Until May 15, 2019, Buena Park's main problem in regulating Short-Term Residential Rentals has been that it had no existing legal authority to enforce its desire to ban such rentals.  Rather than recognize this and enact new applicable ordinances to ban or regulate Short-Term Residential Rentals (if legally permissible), Buena Park instead came down on its citizens including one or more of the Plaintiffs with a heavy hand -- fining them based on old legal authority that obviously does not apply to ban Short-Term Residential Rentals and that predated the rise in popularity of Short-Term Residential Rentals.  Belatedly, on or about May 14, 2019, Buena Park purported to enact an emergency ordinance to ban Short-Term Residential Rentals for forty-five days ("Moratorium 1662"), which has been extended until May 14, 2020.  Then, on January 14, 2020, Buena Park adopted its permanent ordinance effectively banning Short-Term Residential Rentals, effective February 14, 2020 ("Ordinance 1675").  As is alleged below, the problem with Moratorium 1662, Ordinance 1675, and Other Ordinances that Buena Park has tried

to use to ban Short-Term Residential Rentals is that these ordinances violated Plaintiffs' federal constitutional rights, state constitutional rights, and state statutory rights.  Specifically, Buena Park has violated the equal protection and due process clauses of the 14th Amendment of the U.S. Constitution, the impairments of contracts clause of Article 1 of the U.S. Constitution, the excessive fines prohibition of the 8th Amendment of the U.S. Constitution, the equal protection and due process clauses of the California Constitution, and California Civil Code section 52.1.

## **PARTIES**

2.     Plaintiff Liem K. Nguyen ("Liem Nguyen") is and was at all times alleged herein a citizen of the State of California and resident of Orange County, California.  Liem Nguyen and his wife Ngoc Hong Nguyen ("Pearl Nguyen") as landlords rent on a short-term basis part of their single family detached house located at 9160 Via Balboa Circle, Buena Park, California 90620 ("Via Balboa Property"), which home is also where Liem Nguyen and Pearl Nguyen (collectively, "Nguyens") live with their three minor children.

3.     Plaintiff Cassandra Elliott ("Elliott") is and was at all times alleged herein a citizen of the State of California and resident of Orange County, California. Elliott and her mother Kathy Roston ("Roston") as landlords rent on a short-term basis part of their detached house located at 7812 La Habra Circle, Buena Park, California, 90620 ("La Habra Circle Property").  Elliott and Roston live at the La Habra Circle Property while also renting what is commonly referred to as a "granny

flat" in the house on a short-term basis.

4.      Plaintiff Bryan Nguyen ("Bryan Nguyen") is and was at all times alleged herein a citizen of the State of California and resident of Orange County, California.  Bryan Nguyen and Quiyn Dao Thi Bui ("Bui") as landlords rent on a short-term basis a single-family house located at 8249 Lime Circle, Buena Park, California 90620 ("Lime Circle Property").

5.      Plaintiff Wilson Navarro ("Navarro") is and was at all times alleged herein a citizen of the State of California and resident of Orange County, California. Navarro and his wife Cynthia Navarro (collectively, "Navarros") as landlords rent on a short-term basis the detached, single family house located at 7601 Valley View Street, Buena Park California 90620 ("Valley View Street Property").

6.      Defendant Buena Park is a California municipal corporation, existing under the California Constitution, the laws of the State of California, and the Buena Park Municipal Code ("BPMC").

7.      Defendant Adria M. Jimenez is an individual and is the City Clerk of Buena Park.  Defendant Jimenez is being sued in her official as the individual responsible for certifying the adoption of Buena Park Ordinance No. 1675, which is the subject of this lawsuit.

8.      The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants named herein as DOES 1 through 10, inclusive (hereinafter "Doe Defendants"), are unknown to Plaintiffs, who therefore

sue these Doe Defendants in this federal question case by fictitious names pursuant to Central District Local Rule 19-1 and applicable Ninth Circuit case law.  These Doe Defendants and Buena Park are jointly called "Defendants" herein throughout this Complaint.  Plaintiffs will amend the Complaint to allege the true names or capacities of the Doe Defendants if and when they have been ascertained.  Each of the Doe Defendants is responsible in some manner for the unlawful actions herein alleged.

9.    Plaintiffs are informed and believe, and thereupon allege, that Defendants, and each of them, at all relevant times herein, were the agents, employees, servants, joint venturers, alter egos, parents, subsidiaries, management companies, holding companies, directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining Defendants or aided and abetted one another in the actions alleged herein. Defendants, in doing the things hereinafter alleged, were acting within the course and scope of such authority and relationship and are responsible in some manner for the occurrences herein alleged and, as a proximate cause, of Plaintiffs' damages and/or injury as herein alleged.

## JURISDICTION AND VENUE

10.    Plaintiffs seek redress for violations of their civil rights under 42 U.S.C. § 1983; Article I, section 10, clause 1 of the United States Constitution (impairment of contracts clause); and the Eighth (excessive fines provision) and Fourteenth Amendment (equal protection and due process clauses) to the United

States Constitution, and to their civil rights under state law as set forth below.  This court has subject jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1343 (civil rights jurisdiction); 28 U.S.C. § 2201(a) and § 2202 (declaratory relief); and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

11.    This court has personal jurisdiction over all parties because all Plaintiffs own real property in Orange County, all Plaintiffs rent on a short-term basis their respective real property that they own and that is located in Orange County, Buena Park is a local city government located in Orange County, and the alleged wrongs committed by  Buena Park occurred in Orange County, California.

12.    Venue is proper in this District pursuant to 28 U.S. § 1391(b) because all or a substantial part of the events that gives rise to the causes of action alleged below occurred within Orange County, California, which is within the Southern Division of the Central District of California; because Buena Park is a resident of Orange County, California; and because all or of the real properties that are the subject of this action is situated in Orange County, California.

## **GENERAL ALLEGATIONS**

13.    After first attempting to ban Short-Term Residential Rentals using existing provisions of the BPMC, Buena Park purported to enact an emergency ordinance on or about May 14, 2019 to ban Short-Term Residential Rentals for forty-five days ("Moratorium 1662").  On June 25, 2019, the city council of Buena

Park extended the Moratorium 1662 for an additional 60 days.  On or about August 13, 2019, the city council of Buena Park extended Moratorium 1662 yet again (until May 14, 2020).  After a series of public hearings, the city council of Buena Park enacted Ordinance 1675

14.    In enacting Moratorium 1662, Buena Park basically conceded that until May 14, 2019, no ordinance banned short-term rentals of residences in residential areas.  For example, Buena Park initially enacted Moratorium1662 because, to quote some face-saving language by the city, the city had "become aware that because the Zoning Code does not expressly define and prohibit STRs [i.e., short-term rentals], that property owners may be misinterpreting the Zoning Code and thus unknowingly violating its provisions."  In reality, the regulated public not Buena Park has been right:  No Buena Park municipal ordinance (including no zoning ordinance) has banned short-term rentals of homes in residential areas until May 14, 2019 with enactment of Moratorium 1662.  Rather than harass its good citizens, Buena Park should have clearly regulated Short-Term Residential Rentals (if such were legally possible) before fining and suing its good citizens including the Nguyens, who have had at least thirty-five discrete citations totaling more than $21,750 issued against them for short-term rentals, had to defend a lawsuit unsuccessfully brought by Buena Park against the Nguyens, and have, with the other Plaintiffs, been forced to bring the current Action

15.    In effect, therefore, Buena Park applied a new policy and practice of

banning Short-Term Residential Rentals ("Ban on Short-Term Residential Rentals") even before enactment of Moratorium 1662 and its successor, Ordinance 1675. As alleged below, this Ban on Short-Term Residential Rentals has been applied to each of the Plaintiffs.

### Ordinance 1675

16.    Knowing that Moratorium 1662 could not remain in place as more than a temporary measure, on January 14, 2020, Buena Park passed Ordinance 1675, which goes into effect on February 14, 2020. (Attached as Exhibit "A" to this complaint and incorporated herein by reference is what Plaintiffs are informed and believe is a true and correct copy of Ordinance 1675 in its entirety.)

17.    While Ordinance 1675 purports to be an ordinance regulating Short-Term Residential Rentals, it in fact serves as a constitutionally-violative de-facto ban on the vast majority of Short-Term Residential Rentals, including those of Plaintiffs.

18.    Among the various improper, impermissibly vague, onerous, oppressive, and constitutionally-violative provisions of Ordinance 1675, Ordinance 1675 specifically requires, *inter alia*, that "[t]he host is required to reside on the property on which the short-term rental is located…"

### Allegations as to Liem Nguyen and Pearl Nguyen

19.    The Nguyens own and live in a single-family detached residence at the Via Balboa Property in Buena Park with their minor children. The Via Balboa

Property is the Nguyens' only place of residence.

20.     Plaintiffs are informed and believe, and thereupon allege, that the Via Balboa Property is zoned RS-6.

21.     Periodically, the Nguyens rent a portion of the Via Balboa Property to short-term renters.  The Nguyens and their minor children remain in the Nguyen home on the Via Balboa Property while the short-term renters rent a portion of the same home.

22.     From at least October 24, 2018 until the present, Buena Park has sought to force the Nguyens to cease renting any portion of the Via Balboa Property on a short-term basis by issuing the Nguyens at least thirty-give discrete citations totaling over $21,750.  These citations and fines have not been revoked, canceled or forgiven.  Buena Park also sought to force the Nguyens to cease renting as landlords any portion of the Via Balboa Property on a short-term basis by filing a lawsuit against the Nguyens in Orange County Superior Court (Orange County Superior Court Case No. 30-2019-01067825-CU-MC-NJC), which case has since been dismissed without prejudice.

23.     As for the legal basis that Buena Park has attempted to rely upon to ban and/or regulate the Nguyens' short-term rental of the Via Balboa Property, Buena Park first sought to use BPMC section 19.312.010.  Pursuant thereto, single family residences located within the RS-6 zone (where, on information and belief, the Via Balboa Property sits) may be used "only for those activities indicated" in

the table attached as part of section 19.312.010.   Based on the table, the Nguyens are automatically permitted to use the Via Balboa Property for a small group care home, a recreation center, a public park, a real estate sales office, for the keeping of livestock, and – as is material in the instant case – for transitional/supportive housing.  This latter phrase is not defined within the ordinance, but the terms "transitional" and "supportive" do not conflict with the concept of a short-term rental.  In fact, it may be stated that a short-term rental falls within the spirit of transitional housing.  Moreover, considering that section 19.312 automatically permits the Nguyens to host a "small group care home" of up to six individuals requiring 24-hour care (*see* BPMC 19.312.010 (permitting "small group care home" in RS-6 zone) & 19.104.080 (defining "small group care home")), this is consistent with short-term rentals being permitted within the RS-6 Zone.

24.    Secondly, Buena Park also sought to stop the Nguyens from short-term rentals of the Via Balboa Property by claiming that the Nguyens have been violating BPMC sections 1.04.010, 3.16.020, 3.16.170 and 19.512.010.  Collectively, these sections stand for the proposition that anyone offering lodging to strangers for a fee within a designated CG Zone must collect a tax from the stranger to be tendered to Buena Park.  Plaintiffs, however, are informed and believe, and thereupon allege, that the Via Balboa Property, is not within a designated CG Zone.  Thus, the Nguyens have not violated any provision of chapter 03.16 of the BPMC because the Nguyens are not offering transient occupancy within a "hotel" in a CG zone

without a conditional use permit. BPMC section 16.180 states only that a "violation" of this chapter (that being Chapter 3.16) constitutes a nuisance, and to show a violation there must be finding that the Nguyens were operating a "hotel." The term "hotel" is defined as "any structure or any portion of any structure which is occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes, and includes any hotel, inn, tourist home or house, motel, studio hotel, bachelor hotel, lodginghouse, roominghouse, apartment house, dormitory, public or private club, mobilehome or house trailer at a fixed location, or other similar structure or portion thereof." *See* BPMC § 3.16.020. The list does not include a single-family residence such as the Nguyens' home located on the Via Balboa Property.

25. Thirdly and finally, Buena Park has sought to stop the Nguyens from short-term rentals of the Via Balboa Property by claiming that the Nguyens are in violation of BPMC section 5.00.040. Pursuant thereto, "no person shall commence, transact or carry on any business, trade, profession, calling or occupation in the city without first having procured a license from the city to do so or without complying with any and all applicable provisions of this chapter." Nothing in the BPMC, however, defines short-term transient lodging as a business requiring a license and, Plaintiffs are informed and believe, and thereupon allege, that Buena Park has never explained what license the Nguyens are supposed to have obtained. Moreover, BPMC section 5.00.240(A) provides an exemption to "all persons who are engaged

in a business within the city who conduct their business from their place of residence within the city, who do not employ persons to aid in their business, who have no advertising signs on their property or who do not regularly pay for advertising, who have no retail sales tax permit, who do not use or operate trucks as a part of their business, and whose business is not specifically named or set forth in Chapter 5.04."    The Nguyens engage in short-term rentals of the Via Balboa Property, which is the Nguyens' only place of residence; have no advertising signs on the property; do not regularly pay for advertising; have no retail sales permit; do not use or operate trucks as a part of their business, and engage in no business (as part of their short-term rentals) that is listed in Chapter 5.04.  Accordingly, the Nguyens are eligible for an exemption from procuring a license.

26.    These Buena Park Municipal Ordinances  (i.e., BPMC §§ 1.04.010, 3.16.020, 3.16.170, 5.00.040, 19.312.010, and 19.512.010) that Buena Park relies upon to purport to regulate or ban short-term rentals at the Valley Balboa Property are hereinafter collectively referred to hereinafter as the "Other Ordinances."

**Allegations as to Elliott and Roston**

27.    Elliott and Roston own and live at the La Habra Circle Property.

28.    Plaintiffs are informed and believe, and thereupon allege, that the La Habra Circle Property is zoned RS-6.

29.    While still living at the La Habra Circle Property, Elliott and Roston as landlords rent on a short-term basis a granny flat, which is part of the La Habra

Circle Property.

30.    Plaintiffs are informed and believe, and thereupon allege, that from at least March 1, 2019 until the present, Buena Park has sought to stop Elliott and Roston from renting any portion of the Elliott Residence on a short-term basis by, among other things, enacting Moratorium 1662 and by mailing Moratorium 1662 to Elliott and Roston at the La Habra Circle Property.

31.    Plaintiffs are further informed and believe, and thereupon allege, that Buena Park has also sought to use the Other Ordinances to ban and/or regulate the short-term rental of the La Habra Circle Property by Elliott and Roston.

**Allegations as to Bryan Nguyen and Bui**

32.    Bryan Nguyen and  Bui own the Lime Circle Property.

33.    Plaintiffs are informed and believe, and thereupon allege, that the Lime Circle Property is zoned RS-6.

34.    Periodically, Bryan Nguyen and Bui as landlords rent the Lime Circle Property to short-term renters.

35.    Plaintiffs are informed and believe, and thereupon allege, that Buena Park has sought to force Bryan Nguyen and Bui from renting any portion of the Lime Circle Property on a short-term basis by enacting Moratorium 1662 and by mailing Moratorium 1662 to Bryan Nguyen and Bui.

36.    Plaintiffs are further informed and believe, and thereupon allege, that Buena Park has also sought to use the Other Ordinances to ban and/or regulate the

short-term rental of the Lime Circle Property by Bryan Nguyen and Bui.

**Allegations as to the Navarros**

37.    The Navarros own the Valley View Street Property.

38.    Plaintiffs are informed and believe, and thereupon allege, that the Valley View Street Property is zoned RS-6.

39.    Periodically, the Navarros as landlords rent the Valley View Street Property to short-term renters.

40.    Plaintiffs are informed and believe, and thereupon allege, that from shortly after May 2019 to the present, Buena Park has sought to stop the Navarros as landlords from renting any portion of the Valley View Street Property on a short-term basis by mailing Moratorium 1662 to the Navarros.

41.    Plaintiffs are further informed and believe, and thereupon allege. that Buena Park has also sought to use the Other Ordinances to ban and/or regulate the short-term rental of the Valley View Street Property by the Navarros.

## FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983: EQUAL PROTECTION)

### (By All Plaintiffs Against All Defendants)

42.    Plaintiffs incorporate by reference paragraphs 1 – 41 as if fully set forth herein.

43.    Buena Park is a local governmental body that is considered a "person" subject to suit under 42 U.S.C. § 1983.

44.   Moratorium 1662, the Other Ordinances as applied and enforced by Buena Park, and Buena Park's Ban on Short-Term Residential Rentals violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Specifically, Moratorium 1662, the Other Ordinances, and Ordinance 1675 as applied and enforced, and the Ban on Short-Term Residential Rentals seek only to prohibit short-term rentals in residential areas but not longer-term rentals.

45.   This classification by Buena Park has no rational relationship to a legitimate governmental interest, which Buena Park has stated are stopping the "loss of on-street parking supply, increased traffic . . . security problems, increased foot traffic, far more noise than would otherwise exist . .  and . . . parties, . . .. . threats, property damage, fires and physical violence."

46.   As a direct and actual result of Moratorium 1662, Ordinance 1675, and the Other Ordinances as applied and enforced, and Buena Park's Ban on Short-Term Residential Rentals, each of the Plaintiffs has been injured in an amount according to proof including but not limited to the payment (or incurring) of fines for purported violations of Buena Park's ordinances, diminution in value of each of Plaintiffs' real properties, the loss of current and/or future rental income from Short-Term Residential Rentals of each of the Plaintiffs' real properties, and/or having to expend attorneys' fees and costs to challenge Moratorium 1662, the Other Ordinances as applied and enforced, and Buena Park's Ban of Short-Term Residential Rentals.

47.     Unless enjoined by this Court, Buena Park will continue to infringe Plaintiffs' constitutionally protected rights and/or cause irreparable harm to each of the Plaintiffs' real properties. This threat of injury from continuing violations and irreparable harm to each of Plaintiffs' real property requires injunctive relief.

48.     An actual controversy has arisen and now exists between Plaintiffs on the one hand and Buena Park on the other hand.  As described above, Plaintiffs contend that Moratorium 1662, Ordinance 1675 and the Other Ordinances as applied and enforced against Plaintiffs, and Buena Park's Ban on Short-Term Residential Rentals violate the equal protection clause of the Fourteenth Amendment to the United States Constitution because the classification against Short-Term Residential Rentals is not rationally related to a legitimate government function, which Buena Park has stated are stopping the "loss of on-street parking supply, increased traffic . . . security problems, increased foot traffic, far more noise than would otherwise exist . .  and . . . parties, . . .. . . threats, property damage, fires and physical violence."    Buena Park disagrees with this contention by Plaintiffs. A judicial determination of these issues and of the respective duties of Plaintiffs and Buena Park is necessary and appropriate at this time under the circumstances because Moratorium 1662, the Other Ordinances, and Ordinances 1675 are being enforced against Plaintiffs, and Buena Park's Ban on Short-Term Residential Rentals is currently being enforced against Plaintiffs on a "complaint driven basis," i.e., upon a complaint to Buena Park against a specific short-term rental.

## SECOND CAUSE OF ACTION

## (VIOLATION OF EQUAL PROTECTION, CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 7)

### (By All Plaintiffs Against All Defendants)

49.     Plaintiffs incorporate paragraphs 1-48 as if fully set forth herein.

50.     Moratorium 1662, the Other Ordinances as applied and enforced by Buena Park, Ordinance 1675, and Buena Park's Ban on Short-Term Rentals violate the California Constitution's equal protection provision of Article I, section 7, which provides in part that "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws."

51.     Notwithstanding any other provision in this Complaint to the contrary, this second cause of action only seeks declaratory and injunctive relief.  If outside of this Action, Plaintiffs later make a claim upon Buena Park for money or damages for violations of the equal protection provisions of the California Constitution and have this claim for money or damages denied by Buena Park (or deemed denied by Buena Park's failure to act within the time specified by California Government Code section 911.6), Plaintiffs may seek leave to amend this second cause of action to seek relief in the form of money or damages.

## THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983: DUE PROCESS)

### (By All Plaintiffs Against All Defendants)

52.    Plaintiffs incorporate by reference paragraphs 1- 51 as if fully set forth herein.

53.    Buena Park is a local governmental body that is considered a "person" subject to suit under 42 U.S.C. §1983.

54.    Moratorium 1662; the Other Ordinances, on their face and as applied or enforced; Ordinance 1675; and Buena Park's Ban on Short-Term Residential Rentals are unconstitutionally vague restrictions on Short-Term Residential Rentals because (a) Moratorium 1662; the Other Ordinances, on their face and as applied or enforced; Ordinance 1675; and Buena Park's Ban on Short-Term Residential Rentals fail to define the regulation or banning of Short-Term Residential Rentals with sufficient definiteness that people of ordinary intelligence can understand what conduct is prohibited or required and (b)  Moratorium 1662, Ordinance 1675, and the Other Ordinances, on their face and as applied or enforced, and Buena Park's Ban on Short-Term Rentals fail to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner.

55.    Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals do not serve a legitimate governmental interest, which Buena Park has said is to stop the "loss of on-street parking supply, increased traffic . . . security problems, increased foot traffic, far more noise than would otherwise exist . .  and . . . parties, . . .. . . threats, property damage, fires and physical violence."

56.     Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals are not rationally related to a legitimate governmental interest.

57.     Therefore, Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals are in violation of the due process guarantee of the Fourteenth Amendment to the United States Constitution.

58.     As a direct and actual result of Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals, Plaintiffs have been injured in an amount according to proof including but not limited to the payment or incurring of fines for purported violations of Buena Park's ordinances, diminution in value of each of Plaintiffs' real properties, the loss of current and/or future rental income from Short-Term Residential Rentals of each of the Plaintiffs' real properties, and/or having to expend attorneys' fees and costs to challenge Moratorium 1662, Ordinance 1675, the Other Ordinances as applied and enforced, and Buena Park's Ban of Short-Term Residential Rentals.

59.     Unless enjoined by this Court, Buena Park will continue to infringe Plaintiffs' constitutionally protected rights and/or cause irreparable harm to each of the Plaintiffs' real properties.  This threat of injury from continuing violations and irreparable harm to each of Plaintiffs' real properties requires injunctive relief.

60.    An actual controversy has arisen and now exists between Plaintiffs on the one hand and Buena Park on the other hand.  As described above, Plaintiffs contend that Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals violate the due process clause of the Fourteenth Amendment to the United States Constitution because Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals fail to define the regulation or banning of Short-Term Residential Rentals with sufficient definiteness that people of ordinary intelligence can understand what conduct is prohibited or required.  Buena Park disagrees with this contention.  A judicial determination of these issues and of the respective duties of Plaintiffs and Buena Park is necessary and appropriate at this time under the circumstances because Moratorium 1662, Ordinance 1675, the Other Ordinances, and Buena Park's Ban on Short-Term Residential Rentals are currently being enforced against Plaintiffs on a "complaint driven basis," i.e., upon a complaint to Buena Park against a specific short-term rental.

## **FOURTH CAUSE OF ACTION**

### **(VIOLATION OF DUE PROCESS,**

### **CALIFORNIA CONSTITUTION ARTICLE I, SECTION 7)**

### **(By All Plaintiffs Against All Defendants)**

61.    Plaintiffs incorporate by reference paragraphs 1-60 as if fully set forth

herein.

62.     Moratorium 1662; Ordinance 1675; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals violate the due process clause of Article I, Section 7 of the California Constitution, which provides that "[a] person may not be deprived of life, liberty, or property without due process of law."

63.     Notwithstanding any other provision in this Complaint to the contrary, this fourth cause of action only seeks declaratory and injunctive relief.  If outside of this Action, Plaintiffs later make a claim upon Buena Park for money or damages for violations of the due process provisions of the California Constitution and have this claim for money or damages denied by Buena Park (or deemed denied by Buena Park's failure to act within the time specified by California Government Code section 911.6), Plaintiffs may seek leave to amend this fourth cause of action to seek relief in the form of money or damages.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA CIVIL CODE § 52.1)

### (By All Plaintiffs Against All Defendants)

64.     Plaintiffs incorporate by reference paragraphs 1-63 as if fully set forth herein.

65.     Moratorium 1662; the Other Ordinances, on their face and as applied or enforced; and Buena Park's Ban on Short-Term Residential Rentals interfere or

attempt to interfere with Plaintiffs' rights under the due process clause, equal protection clause, Contracts Clause, and excessive fines clause of the United States Constitution and the equal protection clause and due process clause of the California Constitution. These interferences and attempted interferences are also a violation of California Civil Code Section 52.1.

66.    Plaintiffs are informed and believe, and thereupon allege, that Buena Park has used threats, intimidation, or coercion for the purpose of interfering with the state and federal constitutional rights and state statutory rights alleged in the foregoing paragraph.

67.    Unless enjoined by this Court, Buena Park will continue to infringe Plaintiffs' constitutionally protected rights and/or cause irreparable harm to each of the Plaintiffs' real properties (including rental income derived therefrom). This threat of injury from continuing violations and irreparable harm to each of the Plaintiffs' real properties (including rental income derived therefrom) requires injunctive relief.

68.    An actual controversy has arisen and now exists between Plaintiffs on the one hand and Buena Park on the other hand.  As described above, Plaintiffs are informed and believe, and thereupon allege, that Buena Park has used threats, intimidation, or coercion for the purpose of interfering with the Plaintiffs' rights under the due process clause, equal protection clause, Contracts Clause, and excessive fines clause of the United States Constitution; the equal protection clause

and due process clause of the California Constitution; and California Civil Code Section 52.1.  Buena Park disagrees with this contention.  A judicial determination of these issues and of the respective duties of Plaintiffs and Buena Park is necessary and appropriate at this time under the circumstances because Buena Park is and has been interfering with the afore-described constitutional and statutory rights of Plaintiffs.

69.    Notwithstanding any other provision in this Complaint to the contrary, this fifth cause of action only seeks declaratory and injunctive relief.  If outside of this Action, Plaintiffs later make a claim upon Buena Park for money or damages for violations California Civil Code Section 52.1 and have this claim for money or damages denied by Buena Park (or deemed denied by Buena Park's failure to act within the time specified by California Government Code section 911.6), Plaintiffs may seek leave to amend this fifth cause of action to seek relief in the form of money or damages.

## SIXTH CAUSE OF ACTION

### (42 U.S.C. § 1983: IMPAIRMANT OF EXISTING CONTRACT)

### (By All Plaintiffs Against All Defendants)

70.    Plaintiffs incorporate by reference paragraphs 1- 69 as if fully set forth herein.

71.    Buena Park is a local governmental body that is considered a "person" subject to suit under 42 U.S.C. section 1983.

72.    Plaintiffs are informed and believe, and thereupon allege, that Moratorium 1662, Ordinance 1675, the Other Ordinances as applied and enforced, and Buena Park's Ban on Short-Term Rentals are a new exercise of Buena Park's police power, which new exercise of the police power impairs Plaintiffs' existing contracts with AirBnb, other listing services, and short-term renters, that this impairment is substantial, and this impairment is not reasonable and necessary to serve an important public purpose.

73.    Hence, Moratorium 1662, Ordinance 1675, the Other Ordinances as applied and enforced, and Buena Park's Ban on Short-Term Rentals violate the contracts clause ("Contracts Clause") of the Article I, section 10, clause 1 of the United States Constitution, which provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contract."  The Contracts Clause applies to cities including Buena Park.

74.    As an actual and proximate result of the aforementioned conduct, Plaintiffs have been damaged in an amount according to proof at time of trial, but in an amount in excess of the jurisdiction of this Court.

75.    Unless enjoined by this Court, Buena Park will continue to infringe Plaintiffs' constitutionally protected rights and/or cause irreparable harm to the each of the Plaintiffs' real properties.  This threat of injury from continuing violations and irreparable harm to each of the Plaintiffs' real properties requires injunctive relief.

76.    An actual controversy has arisen and now exists between Plaintiffs and Buena Park.    As described above, Plaintiffs contend that Moratorium 1662, Ordinance 1675, the Other Ordinances as applied and enforced, and Buena Park's Ban on Short-Term Rentals violate the Contracts Clause of the Article I, section 10, clause 1 of the United States Constitution.    Buena Park disagrees with this contention.  A judicial determination of these issues and of the respective duties of Plaintiffs and Buena Park is necessary and appropriate at this time under the circumstances because Buena Park is currently enforcing Moratorium 1662, the Other Ordinances, and Buena's Park's Ban on Short-Term Rentals against Plaintiffs on a "complaint driven basis," i.e., upon a complaint to Buena Park against a specific short-term rental.

## SEVENTH CAUSE OF ACTION

### (42 U.S.C. § 1983: EXCESSIVE FINES)

### (By Liem Nguyen Against All Defendants)

77.    Plaintiffs incorporate by reference paragraphs 1- 76 as if fully set forth herein.

78.    Buena Park is a local governmental body that is considered a "person" subject to suit under 42 U.S.C. section 1983.

79.    The Eighth Amendment to the United States Constitution provides in relevant part that "[e]xcessive bail shall not be required, nor excessive fines imposed . . . ."

80.     Plaintiffs are informed and believe, and thereupon allege, that the fines Buena Park has imposed upon the Nguyens did not correlate to the damages sustained by society or to Buena Park's cost to enforce any law against the Nguyens, but rather, were issued to the Nguyens to punish them and to deter them from engaging in further short-term rentals.   Accordingly, the fines Buena Park has imposed upon the Nguyens are excessive within the meaning of the excessive fines provision of the Eighth Amendment.

81.     The fines imposed by Buena Park upon the Nguyens are also excessive because the Other Ordinances on their face do not prohibit or regulate Short-Term Residential Rentals in the manner Buena Park seeks, do not apply to Short-Term Residential Rentals, and were not principally designed to apply to Short-Term Residential Rentals.  The fines imposed by Buena Park upon the Nguyens are also excessive because no harm was actually caused by the Nguyens' Short-Term Residential Rentals.

82.     As an actual and proximate result of the imposition of fines under the circumstances alleged in this cause of action, the Nguyens have been damaged in an amount according to proof at time of trial, but in an amount in excess of the jurisdiction of this Court.

83.     Unless enjoined by this Court, Buena Park will continue to infringe the Nguyens' constitutionally protected rights and/or cause irreparable harm to the Nguyens' Via Balboa Property.  This threat of injury from continuing violations

and irreparable harm to each of the Plaintiffs' real property requires injunctive relief.

84.    An actual controversy has arisen and now exists between Plaintiffs on the one hand and Buena Park on the other hand.  As described above, Plaintiffs contend that the fines that Buena Park has imposed upon Plaintiffs are excessive fines in violation of prohibition against excessive fines contained in the Eighth Amendment of the United States Constitution.  Buena Park disagrees with this contention.  A judicial determination of these issues and of the respective duties of Plaintiffs and Buena Park is necessary and appropriate at this time under the circumstances because Buena Park is and has been imposing excessive fines upon Cross-Complainants.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the City of Buena Park as follows:

(a) As to all causes of action, for declaratory judgment declaring Moratorium 1662; Ordinance 1675; the Other Ordinances, as applied and enforced against Plaintiffs' short-term rentals; and the Ban on Short-Term Residential Rentals to be in violation of (1) Plaintiffs' federal constitutional rights to equal protection (first cause of action), due process (third cause of action), freedom from unconstitutional impairment of contracts (sixth cause of action), and freedom from the imposition of excessive fines (seventh cause of action); (2) Plaintiffs' state constitutional rights of equal protection (second cause of action) and due process (fourth causes of

action); and (3) California Civil Code section 52.1 (fifth cause of action);

(b)  As to all causes of action, for injunctive relief enjoining Buena Park, its agents, servants, employees, officers from enforcing Moratorium 1662, Ordinance 1675, the Other Ordinances, and Buena Park's Ban on Short-Term Residential Rentals against Short-Term Residential Rentals by Plaintiffs;

(c)  As to the first, third, sixth, and seventh causes of action only, for Plaintiffs' costs, interest, and reasonable attorneys' fees for this Action pursuant to 42 U.S.C. §1988 and other relevant statutes; and,

(d) For such other and further relief as the Court deems just and proper under the circumstances.

<u>REQUEST FOR JURY TRIAL</u>

Plaintiffs hereby request a trial by jury of all issues triable by jury.

DATED:  February 14, 2020              THE RUSSELL LAW GROUP


By:   /s/Dennis Russell
       Dennis Russell, Esq.
       Attorney for Plaintiffs

**COMPLAINT**

1

**EXHIBIT "A"**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**EXHIBIT "A"**

24

25

26

27

28

1

**COMPLAINT**

ORDINANCE NO. 1675

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF BUENA PARK, REGULATING SHORT-TERM RENTALS ON PROPERTIES ZONED FOR SINGLE-FAMILY RESIDENCES, ADOPTING TEXT AMENDMENT NO. C19-2 AND AMENDING THE BUENA PARK ZONING ORDINANCE.

## A. Recitals.

(i)    The City of Buena Park, California ("City") is a municipal corporation, duly organized under the constitution and laws of the State of California.

(ii)    It is the City Council's intent in adopting this Ordinance to implement new development standards that are reasonably designed to regulate short-term rental units within the City limits, to the extent required and permissible by law.

(iii)    The City Council hereby finds that unregulated transient occupancy uses in residential and nonresidential districts present a threat to the public welfare relating to compatibility with residential uses and preservation of the character of the neighborhoods in which they are located.

(iv)    The City Council hereby finds that regulated short-term rentals allow residents to earn extra income thereby making their housing more affordable.

(v)    The City Council hereby finds that the adoption of a comprehensive ordinance regulating the issuance of and operating conditions attached to short-term rental permits is necessary to protect the public health, safety and welfare. The purpose of this ordinance is to provide a permit system and to impose operational requirements to minimize the potential adverse impacts of transient uses in residential neighborhoods and zoning districts on traffic, noise, and density to ensure the health, safety and welfare of renters and guests patronizing short-term rentals; and to impose reasonable limitations in order to ensure the long term availability of housing stock in compliance with the Housing Element of the City's General Plan.

(vi)    The City Council hereby finds that provision of this ordinance which allows only residents to host guests in their home while they reside on-site, prevents permanent long-term housing from being converted into short-term rentals operated for commercial interest.

(vii)    The City Council hereby finds that the provisions of this ordinance which allow only homeowners to operate a short-term rental is necessary to eliminate investor/ corporate owned and operated short term rentals, to maintain the residential integrity and adverse impacts from commercialization of City's neighborhoods.

ORDINANCE NO. 1675
Page 2

(viii)    The City Council hereby finds that the provisions of this section which impose restrictions on commercial speech, pursuant to the restrictions on advertisements set forth in this section, are necessary in order to advance the City's legitimate interest in preventing rental activity that violates this Code, and in regulating fraudulent, misleading, or deceptive advertising. These restrictions on advertising are necessary in order to prevent advertisers from engaging in unlawful rental activity and from misleading the general public to think that a particular property in the City is available for transient occupancy if, in fact, the advertised property is not authorized to be used for transient occupancy purposes in accordance with this section.

(ix)    The City Council hereby finds that the City's regulation of short-term rental uses in accordance with this section is a valid exercise of the City's police power in furtherance of the legitimate governmental interests documented in this section.

(x)    On May 14, 2019 the City Council adopted Ordinance No. 1662, an urgency ordinance pursuant to California Government Code Section 65858 for the clarifying the existing prohibition on short-term rentals within the City.

(xi)    On June 25, the City Council adopted Ordinance No. 1664, to extend the moratorium to August 13, 2019 and directed staff to begin drafting regulations to permit short-term rentals within the City.

(xii)    On July 9, 2019 the City Council conducted a Study Session to discuss policy considerations for regulating short-term rentals

(xiii)    On August 13, 2019 the City Council adopted Ordinance No.1670, to extend the moratorium until May 14, 2020 to allow more time for the creation of regulations and amendment to the City's Zoning Code.

(xiv)    On August 28, 2019 the Planning Commission conducted a study session/ community workshop to discuss first draft of the ordinance.

(xv)    On October 23, 2019, the Planning Commission conducted a duly noticed public hearing, to consider the Text Amendment No. C19-2.

(xvi)    On November 13, 2019, the Planning Commission conducted a duly noticed public hearing, to consider the Text Amendment No. C19-2.

(xvii)    On January 14, 2020, the City Council conducted a duly noticed public hearing, to consider the Text Amendment No. C19-2.

(xviii)    All legal prerequisites to the adoption of this Ordinance have occurred.

ORDINANCE NO. 1675
Page 3

**B. Ordinance.**

NOW, THEREFORE, the City Council hereby ordains as follows:

SECTION 1. The City Council finds that the facts set forth in the Recitals, Part A, of this Ordinance are true and correct.

SECTION 2. Section 19.348 Special Requirements for Certain Uses of Title 19 of the Buena Park Municipal Code is hereby amended to read as follows (additions in underline, deletions in ~~strikethrough~~):

19.348.080 RESIDENTIAL SHORT-TERM RENTALS

**A. Scope, purpose and findings.**

The purposes of this section are to:

1. Document the procedures and regulations that govern the application for, and the issuance and implementation of, permits for the operation of any residential short-term rental use within the City.

2. Establish that transient occupancy uses are not permitted or conditionally permitted in residential or nonresidential zoning districts, unless either: (i) the City has approved a hotel use in a nonresidential zoning district pursuant to Title 19, or (ii) the City has approved a short-term rental permit pursuant to this section.

**B. Definitions.**

"Advertise" means any communication that induces or encourages any person to rent for transient occupancy purposes, or that provides information (to any person) that promotes the availability to rent for transient occupancy purposes, any building in the City.

"Applicant" means any person, who seeks approval of a short-term rental permit under the authority of this section.

"Authorized agent" means the person specifically authorized by a short-term rental host in lieu of themselves as the 24-hour emergency contact for a lawfully operating short term rental.

"Bedroom" means a room within a dwelling unit, other than a kitchen, living room or dining room, which could be used for sleeping purposes, is provided with natural light and natural ventilation, and is separated by a door or archway from the rest of the dwelling unit. "Code" means the Buena Park Municipal Code.

"Director" means the Director of the Community Development, or designee. "Enforcement officer" means the Director, Building Official, Fire Marshal, City Code Enforcement Officer, or any other City employee designated by the Director or City Manager to enforce this section.

ORDINANCE NO. 1675
Page 4

"Guest" means an invitee of a renter or other person visiting a renter of a short-term rental unit who is not listed on the rental agreement.

"Host" means a person or persons holding fee title to the real property that is the subject of a short-term rental permit and to whom the short-term permit is issued.

"Owner" means a person or persons, not a corporation or a limited liability company, holding fee title to the real property.

"Renter" means a person or persons, not a host, who have lawfully obtained the exclusive use and possession of the short-term rental property or portion thereof from its host or authorized agent.

"Resides" means legal residence, also referred to as primary residence of a property owner, as reflected in title records, as evidenced by homeowner's exemption, voter registration, vehicle registration, or similar means.

"Sign" shall have the same meaning as the term used in Title 19 Division 9 of this Code.

"Transient occupancy" shall have the same meaning as the term is used in Chapter 3.16 of this Code.

"Short-term rental" means the renting of any portion of any structure or residential dwelling unit for a period of not less than 12 hours and for a maximum of 29 consecutive days to a particular occupant. A short -term rental shall not be considered as a hotel, extended stay hotel, motel or corporate apartment.

"Short-term rental unit" means the structure or residential dwelling unit in which the short-term rental use is permitted to operate, pursuant to a permit issued in accordance with this section.

**C. Short-term rental permit application.**

No short-term rental may operate without a permit as required by this Section 19.348 of the Buena Park Municipal Code.

1. The Director shall accept written applications for short-term rental permits in accordance with this section. The Director shall make a decision and provide that decision in writing within six (6) weeks of the date of receipt of a complete application.

2. Each application for a short-term rental permit shall be on a City-provided form and shall include the following information and documentation, signed by the host, and otherwise in a form acceptable to the Director:

   a. Location of real property where a short-term rental use is proposed.

   b. Identity of the host(s) of the real property on which the short-term rental is proposed (include the name, mailing address, email address, and 24-hour telephone number). Identity of the authorized agent on behalf of the host (include the name, mailing address, email address, and telephone number)

ORDINANCE NO. 1675
Page 5

    c. Provide adequate documentation such as driver's license, voter registration, vehicle registration, utility bills or property tax records showing name of the host(s) and the short-term rental property address that establishes the host resides at the short-term rental unit as their primary residence.

    d. A sketch of the floor plan, which identifies sleeping areas, proposed maximum number of guests, evacuation route(s), location of fire extinguisher(s), and approximate square footage in the vacation rental unit.

    e. The maximum number of vehicles allowed for overnight occupants, including host's and other long-term residents' vehicles and location of designated on-site parking spaces. All required garage spaces will be used for storage of operable vehicles.

    f. Written acknowledgement and agreement that the owner(s) have read and agree(s) to all regulations pertaining to the operation of a short-term rental, including this section, the City's business license requirements (Title 5.00 of this Code), the City's transient occupancy tax requirements (Chapter 3.16 of this Code), and any additional administrative regulations promulgated by the Director to implement this section.

    g. Copy of the standard rental agreement to be used by the short-term rental host, including 'house rules', and any associated materials as required by Section E. 5 of this section. Written acknowledgement and agreement that claims, requests, objections and arguments not set forth in the short-term rental permit application, prior to the final decision on the permit, are and shall be deemed waived to the maximum extent permitted by law.

    h. Written agreement that any and all use of the property for short-term rental/transient occupancy purposes shall cease upon the expiration or revocation of the short-term rental permit.

    i. Written agreement to hold harmless, indemnify and defend the City, its elected officials, officers, employees, contractors, volunteers, and agents, against any and all claims and liabilities arising out of, or related to the issuance of the short-term rental permit, to the maximum extent permitted by law.

    j. Declaration under penalty of perjury that the information submitted is accurate and truthful, and that the applicant agrees to comply with all conditions of the permit and this section.

    k. Payment of the application and processing fee established by City Council resolution based on the City's estimated reasonable costs to process and review the application materials, and to mail notice to property owners within three hundred feet.

    l. Previous active or expired short-term rental permits on the property.

    m. Letter of No Objection from the Home Owner's Association (if applicable).

ORDINANCE NO. 1675
Page 6

     n.  Any other information that the Director deems reasonably necessary to administer this section.

  3.  Applications shall not be considered complete until all documentation required under this section has been submitted, and until the full application and permit fees have been paid. Incomplete applications will not be processed.

**D. Decision on application.**

The Director shall process and evaluate permit applications pursuant to this section.

  1.  If the Director determines that an applicant has failed to satisfy the application requirements of subsection C. of this Section, the Director shall provide written notice to the applicant that the application has been denied and the basis for the denial.

  2.  Director will mail notice of applicant's request to property owners within 300 feet of the subject property. The Director will consider any written comments received within ten (10) days of the mail of the notice, in his or her decision on the application.

  3.  Property line of the property that is the subject of the permit application shall not be within 300 feet of the nearest property line of any other short-term rental (approved or conditionally approved by the Director pursuant to this section).

  4.  If the Director determines supplemental evidence at a public hearing is warranted in order to determine whether an applicant will adequately mitigate potential adverse impacts to the public health, safety, or welfare due to substantial concerns raised by neighbors, or to evaluate the impacts of a concentration of uses, under Section D.3 above, the Director shall notice a public hearing of the Planning Commission. The Planning Commission is authorized to deny, approve, or conditionally approve the permit in accordance with the criteria set forth in this section, particularly paragraph C of this section. The Planning Commission's decision shall be final.

  5.  If the Director determines that an applicant has satisfied the application requirements of subsection C. of this Section, and that the applicant has borne the burden of proving that the applicant will adequately mitigate potential adverse impacts on the public health, safety, and welfare, the Director shall provide written notice to the applicant that the short-term rental permit is approved or conditionally approved, subject to compliance with the conditions identified by the Director in the notice. The conditional short-term rental permit shall be effective upon receipt of the applicant's written agreement to comply with all permit conditions set forth in the notice, and all requirements of this section and such date shall be set forth in the permit.

  6.  Upon the Director's receipt of the signed agreement, the Director shall provide written notice to all property owners within 300 feet of the conditional or otherwise, approval of the short-term rental permit, which shall include the following:

     a.  A concise summary of the terms of the permit, including: (i) the maximum number of occupants permitted to stay in the short-term rental unit; (ii) any special

ORDINANCE NO. 1675
Page 7

conditions or restrictions applied to the short-term rental permit; and (iii) how to obtain a complete copy of the permit and this section.

b.  The City's Code Enforcement telephone number at which members of the public may report violations of this section, the short-term rental permit, and any permit conditions.

**E. Conditions applicable to permits.**

Each short-term rental permit issued pursuant to this section shall be subject to all of the following requirements:

1.  Short term rentals are permitted in single family residential dwelling unit only. Use of portions of a unit for 'day-use' for portions of a day shall not be permitted.

2.  The host is required to reside on the property on which the short-term rental is located. Further, a sleeping area must, at a minimum, include shared use of a full bathroom.

3.  The host shall comply with all requirements of and be subject to the Business License Fees (Title 5.00 of this Code) and the Transient Occupancy Tax (TOT) (Chapter 3.16 of this Code) for the short-term rental use. The TOT may be remitted by the hosting platform on behalf of the host. The host shall have the duty and liability to ensure timely remittance of the TOT to the City in compliance with Chapter 3.16 of this Code.

4.  The host shall permit the Enforcement Officer to conduct an annual inspection of the short-term rental premises to confirm compliance with this section. The City shall notify the permittee of the scheduled inspections at least 2 (two) weeks in advance.

   a.  The property address shall be visible from the street and in contrasting colors for quick identification by emergency responders.

   b.  Smoke detectors shall be installed per the California Building Code.

   c.  No double keyed dead bolts may be installed on exit doors.

   d.  A fully charged, portable fire extinguisher shall be provided in an easily accessible and clearly designated area.

   e.  Exit doors may not be obstructed and/or prohibited from fully opening.

   f.  Clearance from ignition sources such as luminaries, heaters and flame- producing devices shall be maintained in an approved manner.

   g.  Hot ashes or coals shall be disposed in a metal container with a tight-fitting lid and kept a minimum of 10 feet from any structures.

   h.  Wood burning fire pits are not allowed.

   i.  No electrical wiring may be exposed or open in any outlet, switch or junction

ORDINANCE NO. 1675
Page 8

j.  The electrical breaker box shall be labeled for distribution to appliances and may not contain any open slots.

k.  There shall be no unpermitted improvements or modifications to the home or garage.

l.  An informational packet of emergency numbers shall be prepared for renters to direct them in the event of an emergency.

m.  Each bedroom that is a part of the short-term rental use shall have an emergency escape or rescue exit plan posted.

n.  All swimming pools and spas must meet  2 of the 7 safety features listed below, as defined in Article 2.5 of the State of California Health and Safety Code.

   (1) An enclosure that meets the requirements of California Health and Safety Code Section 115923 and isolates the swimming pool or spa from the private single-family home.

   (2) Removable mesh fencing that meets American Society for Testing and Materials (ASTM) Specifications F2286 standards in conjunction with a gate that is self-closing and self-latching and can accommodate a key lockable device.

   (3) An approved safety pool cover, as defined in subdivision (d) of California Health and Safety Code Section 115921.

   (4) Exit alarms on the private single-family home's doors that provide direct access to the swimming pool or spa. The exit alarm may cause either an alarm noise or a verbal warning, such as a repeating notification that "the door to the pool is open."

   (5) A self-closing, self-latching device with a release mechanism placed no lower than 54 inches above the floor on the private single-family home's doors providing direct access to the swimming pool or spa.

   (6) An alarm that, when placed in a swimming pool or spa, will sound upon detection of accidental or unauthorized entrance into the water. The alarm shall meet and be independently certified to the ASTM Standard F2208 "Standard Safety Specification for Residential Pool Alarms," which includes surface motion, pressure, sonar, laser, and infrared type alarms. A swimming protection alarm feature designed for individual use, including an alarm attached to a child that sounds when the child exceeds a certain distance or becomes submerged in water, is not a qualifying drowning prevention safety feature.

   (7) Other means of protection, if the degree of protection afforded is equal to or greater than that afforded by any of the features set forth above and has been independently verified by an approved testing laboratory as

ORDINANCE NO. 1675
Page 9

meeting standards for those features established by the ASTM or the American Society of Mechanical Engineers (ASME).

5. Short term rental host shall be responsible for informing their renters of the 'house rules'. Such rules shall, at a minimum, include rules as explained in this paragraph. As part of the application for rental, the prospective renter shall sign an agreement acknowledging the house rules and promising to comply with the following:

   a. A copy of the house rules, and the short-term rental permit shall be posted in a prominent location inside the short-term rental unit.

   b. The permittee shall provide access to the garage of the residence if that area has been included in the determination of the number of available on-site spaces for renters.

   c. It is the intent of the City to enforce all applicable provisions of State law related to the provision for emergency vehicle access. Accordingly, no limousine or bus parking, and no stopping without the driver's presence, shall be allowed in any manner that would interfere with emergency vehicle access. In the event of an emergency, the vehicle driver shall immediately move the vehicle from the emergency access area.

   d. Renter and/or guests of the short-term rental unit shall maintain the property free of debris both on-site and in the street. Trash cans shall be maintained in a clean and sanitary manner in conformance with this Code. Trash cans shall not be placed on the street prior to 24 hours before pick up day and shall be promptly removed from the street following service.

   e. Quiet times shall be from 10:00 p.m. to 7:00 a.m.

   f. The renters and/or guests of the short-term rental shall not create unreasonable noise or disturbances, engage in disorderly conduct, or violate provisions of this Code or any State law pertaining to noise or disorderly conduct. Further, the permittee shall contact the Police Department in the event renters or guests fail to comply with this subsection.

   g. No short-term rental unit may be used for any wedding, auction, commercial function, or other similar event that is inconsistent with residential uses permitted by this Code.

   h. Pets may be permitted by the short-term rental business host, provided the pet is attended to at all times and has current vaccinations.

   i. Discharge of fireworks is prohibited except on the 4th of July, between the hours of 10:00 a.m. and 10:00 p.m.

   j. Maximum occupancy permitted within the active short term rental permit.

6. No person shall advertise the use of a building in a residential or nonresidential zoning district of the City for a transient occupancy use unless: (a) the use is a hotel use in a

ORDINANCE NO. 1675
Page 10

nonresidential zoning district approved by the City pursuant to Title 19; or (b) there is a current City issued short-term rental permit for the property. All advertisement for short-term rentals must include the City issued short-term rental permit number.

7. There shall be no signs or other structures except those permitted for a dwelling use in the zone.

8. Pools and hot tubs shall have the hours of operation clearly posted adjacent to the facility. Hours shall comply with the hours set forth in Section E.5. e.

9. Lighting on premises shall be directed, controlled, screened, or shaded in such a manner as not to shine directly on surrounding premises. Lighting on premises shall be controlled so as to prevent glare on driveways, walkways, and public thoroughfares. The use of unshaded clear bulbs in exterior lighting is prohibited.

10. A short-term rental shall not operate on a property where an accessory dwelling unit exists. A short-term rental permit shall become void upon approval of an accessory dwelling unit on a property.

11. Structures not built for habitable use such as but not limited to tents, trailers, tree houses, garage, storage shed; or temporary structures such as recreational vehicles shall not be used for short-term rentals or to satisfy the host occupant requirement of this section.

12. A host shall maintain liability insurance of not less than $1,000,000 to cover each short-term rental unless such short-term rental is offered through a hosting platform that maintains equal or greater coverage.

13. Maximum occupancy of a residential unit with an active short term rental permit shall be limited to 2 (two) adults per bedroom and 2 (two) additional adults for the entire unit. There is no occupancy limitation on the number of accompanied children under the age of eighteen.

14. All short-term rental hosts must maintain a detailed and accurate record of their guest information pertaining to hosting dates, and financial documentation, and make this information available to relevant authorities upon request. Hosts must keep this record for five years and may be audited to ensure tax compliance.

15. For each short-term rental use:

    a. The host or the authorized agent must be available to the Enforcement Officer and the renter, by telephone 24 hours per day, 7 days per week when the short-term rental is rented.

    b. The host or authorized agent must be on the premises of the short-term rental unit within one hour of being notified (by a renter, or by the Director or Enforcement Officer) that there is a need for the host or the authorized agent to address an issue of permit compliance or the health, safety, or welfare of the public or the renter.

ORDINANCE NO. 1675
Page 11

16. Only one short-term rental permit within the City, per individual shall be in effect at any time.

## F. Restrictions on permit transfer.

Each short-term rental permit issued in accordance with this section shall be personal to the host to whom the permit is issued, and no person shall transfer, or attempt to transfer, the permit to any other person, unless the transfer is made in accordance with this section. Any attempt to transfer a short-term rental permit, or use a transferred short-term rental permit, that is not transferred in accordance with this section shall be void, and shall constitute a violation of this Code.

1. A short-term rental permit shall not be transferred by any person.

2. If the residence is sold to a new owner, the permit is void and the new owner will need to apply for a new short-term rental permit in their own name.

3. If the permit requires a name change due to a partial change in ownership, the new owner(s) can be added or removed from the permit by written notice to the Director. The written notice must include the reason for the change, documentation partial change in ownership, such as marriage certificate, divorce decree etc., the name(s) and contact information to be removed and the name(s) and contact information to be added. All parties on the current permit and any new parties, must sign and the document must be notarized.

## G. Permit renewal and annual review.

1. Unless revoked by the Director earlier pursuant to this Section, a permit to operate a short-term rental expires three (3) years after the date of its issuance.

2. A host shall apply for renewal prior to the expiration of the permit on a form provided by the Director no later than thirty (30) days prior to its expiration. The host shall update the information contained in the original permit application required per this Section, if any information has changed. The host shall sign a statement affirming that there is either no change in the information contained on the original permit application and any subsequent renewal applications, or that any information that has been updated is accurate and complete.

3. An application for permit renewal received after the expiration of the current permit shall be treated as an application for a new permit set forth in this Section.

4. The Director shall follow the procedures set forth in this article when determining whether to renew a permit.

5. Upon expiration of any short-term rental permit, it shall be of no further force, validity or effect, and use of the property for transient occupancy purposes shall cease.

ORDINANCE NO. 1675
Page 12

6. An annual inspection shall be conducted. The host shall submit to the Director the annual inspection fee along with all of the information set forth in this section.

    a. The host shall pay the annual inspection fee established by City Council resolution based on the City's estimated reasonable costs to perform the annual inspections identified in this section.

    b. The host shall comply with the requirements of Section E.

    c. The host shall document compliance with all requirements of the Business License Ordinance (Title 5.00 of this Code).

    d. The host shall provide evidence of compliance with all requirements of the Transient Occupancy Tax Ordinance (Chapter 3.16 of this Code), as may be required by the Director. The host shall also document each date on which the short-term rental was rented during the previous term of the permit (if applicable).

**H. Director's action following annual inspection.**

Following an annual permit inspection:

1. If the Director determines that the host is in compliance with all requirements of this section and the permit, the Director shall provide written notice to the host and authorized agent that the inspection passed.

2. If the Director determines that the host has failed to comply with this section or the permit conditions, the Director shall provide written notice of the inspection failure, listing what defects were found. The host shall be allowed to remedy any defect as identified by the Director, by submitting proof of remedy within 30 days. If the permittee does not submit proof of remedy within 30 days, subsection J of this Section shall be followed.

**I. Permit modification, suspension, or revocation.**

1. At any time during the term of a short-term rental permit, the Director may modify, suspend, or revoke the short-term rental permit (or pursue any other remedy set forth in Title 1 of this Code), if the Director makes any of the following findings:

    a. a short-term rental use is detrimental to the public health, safety, or welfare; or

    b. the host has provided false or misleading information in connection with any submittal required under this section or this Code; or

    c. the host is in violation of, or has failed to comply with, any requirements of this section, the permit terms and conditions, this Code, or any state or federal law; or

    d. if the host has not rented the short-term rental for a minimum of 10 total days within any 12 month period.

2. In the event the Director finds any of the above findings and orders the modification, suspension, or revocation of a short-term rental permit (whichever the case may be), the

ORDINANCE NO. 1675
Page 13

Director shall provide written notice to the permittee of his or her decision by certified mail to the name and address listed on the permit.

**J. Violation and penalties.**

1. It shall be unlawful for any person to violate any provision or fail to comply with any requirement of this section. Any person who violates any provision of this section, or fails to comply with any obligation or requirement of this section, or who fails to comply with any order or notice issued pursuant to the provisions of this section, is guilty of a misdemeanor offense punishable in accordance with Chapter 1.04 of this Code. Nothing in this section shall prevent the city attorney or city prosecutor from prosecuting a violation of this chapter as an infraction, at his or her discretion, as set forth in Chapter 1.04 of this Code.

2. Each violation of this section shall be a separate offense for each and every day, or part thereof, during which a violation of this section, or of any law or regulation referenced herein, is allowed, committed, continued, maintained or permitted by such person, and shall be punishable accordingly.

3. In addition to the remedies set forth in this section, any person who violates any provision of this section, or fails to comply with any obligation or requirement of this section, or who fails to comply with any order or notice issued pursuant to the provisions of this section, is subject to any and all civil and administrative penalties and remedies authorized under Chapter 1.04 of this Code.

4. Public Nuisance. In addition to the penalties provided by this section, any condition or activity caused or permitted to exist in violation of any provision, restriction, or requirement of this section or any notice, order, or permit issued pursuant to this section, shall be deemed a public nuisance and may be summarily abated by the city by any and all means (civil, administrative, and/or equitable) as provided by law or in equity.

**K. Appeals.**

Any determination made by the Director pursuant to this section shall be final unless appealed pursuant to the requirements of this section.

1. Any decision by the Director to approve, conditionally approve, or deny a permit application, or to modify, suspend, or revoke a permit, or to impose any penalty or undertake any enforcement action permitted herein, may be appealed only to the Planning Commission. A written appeal must be received by the Director within ten (10) business days of the date the appealed decision was rendered or action was taken. Upon receipt of an appeal within ten (10) working days, the Director will schedule a public hearing before the Planning Commission. The Planning Commission may affirm, reverse, or conditionally reverse the Director's decision and the Planning Commission's decision shall be final.

2. Failure to file an appeal within ten (10) business days of the date the appealed decision was rendered, or action was taken shall constitute a waiver of the appeal and a failure to exhaust administrative remedies, and shall preclude any and all relief and claims arising in connection with the determination by the Director pursuant to this section.

ORDINANCE NO. 1675
Page 14

SECTION 3. Table 19.312.010 Uses Permitted – Single-Family Residential Zones of Chapter 19.312 of Title 19 of the Buena Park Municipal Code is hereby amended to read as follows (addition in underline and deletion in ~~strikethrough~~):

| Table 19.312.010 | | | | | |
|---|---|---|---|---|---|
| **USES PERMITTED—SINGLE-FAMILY RESIDENTIAL ZONES** | | | | | |
| Uses | Residential Zones | | | | |
| | RS-16 | RS-10 | RS-8 | RS-6 | PD (14) |
| **Residential Uses** | | | | | |
| Single-Family Dwellings: | | | | | |
| • Site-built. | P | P | P | P | C |
| • Manufactured. | P | P | P | P | |
| • Single-family cluster. (15) | | | | C | C |
| • Transitional/supportive housing. | P | P | P | P | C |
| Community Residential Care: | | | | | |
| • Small group care home. | P | P | P | P | P |
| • Other community residential care facility. | C | C | C | C | |
| Residential Accessory Uses: | | | | | |
| • Accessory dwelling units. (1) | P | P | P | P | P |
| • Guesthouse. | C | C | C | C | C |
| • Home occupation. (2) | P | P | P | P | P |
| • Short-term rental. (19) | I | I | I | I | I |
| • Animal keeping. (3) | P | P | P | P | P |
| • Swimming pool, therapeutic pool, recreational structure. | P | P | P | P | P |
| • Clubhouse, meeting room, game room, gymnasium, sauna, health center (private use only). | (note 4) | (note 4) | (note 4) | (note 4) | (note 4) |
| • Parking, within garage. | P | P | P | P | P |
| • Parking, under carport. | (note 5) | (note 5) | (note 5) | (note 5) | (note 5) |
| • Parking, uncovered. | (note 5) | (note 5) | (note 5) | (note 5) | (note 5) |
| • Yard sale. (6) | P | P | P | P | P |
| **Public Service Uses** | | | | | |
| Community Day Care: | | | | | |

ORDINANCE NO. 1675
Page 15

<table>
<tr><th colspan="6">Table 19.312.010<br><br>USES PERMITTED—SINGLE-FAMILY RESIDENTIAL ZONES</th></tr>
<tr><th rowspan="2">Uses</th><th colspan="5">Residential Zones</th></tr>
<tr><th>RS-16</th><th>RS-10</th><th>RS-8</th><th>RS-6</th><th>PD (14)</th></tr>
<tr><td>• Small group child day care home (1-14 children). (17)</td><td>I</td><td>I</td><td>I</td><td>I</td><td>I</td></tr>
<tr><td>• Small group adult day care home (1-6 adults).</td><td>I</td><td>I</td><td>I</td><td>I</td><td>I</td></tr>
<tr><td>• Child day care center. (7)</td><td></td><td>Ci</td><td></td><td>Ci</td><td>Ci</td></tr>
<tr><td>• Adult day care center. (7)</td><td></td><td>Ci</td><td></td><td>Ci</td><td>Ci</td></tr>
<tr><td><u>Public Assembly:</u> (See also Recreation)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>• Church. (8), (9)</td><td></td><td></td><td></td><td>C</td><td></td></tr>
<tr><td>• Emergency shelter. (18)</td><td></td><td></td><td></td><td>I</td><td></td></tr>
<tr><td><u>Education:</u></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>• Educational institution. (9)</td><td></td><td>C</td><td>C</td><td>C</td><td></td></tr>
<tr><td><u>Recreation: (see also Division 5, Commercial Uses - Commercial Recreation.)</u></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>• Public park, public playground, public recreational area, public landscaped open space, public-owned historical site or feature.</td><td></td><td>P</td><td>P</td><td>P</td><td>P</td></tr>
<tr><td>• Community recreation center.</td><td></td><td></td><td></td><td>P</td><td>C</td></tr>
<tr><td><u>Utilities and Communications (16):</u></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>• Aviation navigational aids.</td><td></td><td>C</td><td>C</td><td>C</td><td>C</td></tr>
<tr><td>• Public utility facilities or structures, including electrical substations and cellular telephone facilities.</td><td>C</td><td>C</td><td>C</td><td>C</td><td></td></tr>
<tr><td><u>Transportation:</u></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>• Parking lot.</td><td></td><td>C</td><td>C</td><td>C</td><td>C</td></tr>
<tr><td><b>Agricultural Uses</b></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>• Horticultural production, plant nursery (no sales), keeping of livestock. (10)</td><td></td><td></td><td></td><td>P</td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td>C</td><td></td></tr>
</table>

ORDINANCE NO. 1675
Page 16

| Table 19.312.010 | | | | | |
|---|---|---|---|---|---|
| **USES PERMITTED—SINGLE-FAMILY RESIDENTIAL ZONES** | | | | | |
| | **Residential Zones** | | | | |
| **Uses** | **RS-16** | **RS-10** | **RS-8** | **RS-6** | **PD (14)** |
| • Horticultural production, plant nursery (with sales). (11) | | | | | |
| **Temporary Uses** | | | | | |
| • On-site construction facilities. (12) | P | P | P | P | P |
| • On-site real estate sales office. (13) | P | P | P | P | P |

**Notes:**

1   Special requirements apply for accessory dwelling units. See Section 19.348.010.

2   Special requirements apply for home occupations. See Section 19.348.030.

3   Special requirements apply for animal keeping. See Section 19.348.050.

4   Permitted as an incidental use for a single-family cluster housing development. See Section 19.348.020.

5   In the RS zones, carports and uncovered parking are permitted for parking spaces which are in addition to the required garage spaces.

6   Special requirements apply for yard sales. See Section 19.348.040.

7   Permitted with a conditional use permit as an incidental use provided that sufficient parking and circulation can be provided on the property and the hours of operation for the incidental use will not conflict with the primary use.

ORDINANCE NO. 1675
Page 17

8    In all residential zones in which churches are permitted, such churches shall be located on and oriented to a major, primary, or secondary highway as defined and designated in the Buena Park General Plan.

9    Bingo games shall be permitted as an accessory use only when authorized under Chapter 5.16 et seq., and only when fire and safety regulations are met and parking facilities are fully conforming to the requirements for public assembly use.

10   Applies to A Overlay Zone only. See Section 19.312.040.

11   Special requirements apply for agricultural uses. See Section 19.348.060.

12   Offices, storage, activities, and facilities directly pertaining to construction for a permitted use on the same site provided construction is not suspended for more than 30 consecutive days.

13   Temporary real estate sales office, only for sales or leasing of new subdivision and for not more than 1 year.

14   Permitted uses and intensity of use in the PD zone shall be determined in a public hearing subject to the provisions.

15   Special requirements apply for single-family cluster developments. See Section19.348.020.

16   See Division 12 of Zoning Ordinance.

17   All applicants shall comply with the State Health and Safety Code with regard to the maximum number of children that may be supervised at any one time based on applicable standards and criteria. In no case, shall the total number of children supervised at any one time at any residence exceed 14.

18   Special requirements apply for emergency shelters. See Section 19.348.070.

19.  Special requirements apply for short-term rentals. See Section 19.348.080

    SECTION 4.    Table 19.412.010 Uses Permitted – Multi-Family Residential Zones of Chapter 19.412 of Title 19 of the Buena Park Municipal Code is hereby amended to read as follows (addition in underline and deletion in strikethrough):

ORDINANCE NO. 1675
Page 18

Table 19.412.010

USES PERMITTED—MULTIFAMILY RESIDENTIAL ZONES

| Uses | Residential Zones | | | |
|------|------|------|------|------|
| | RMH | RM-10 | RM-20 | PD (12) |
| **Residential Uses** | | | | |
| Single-Family Dwellings: | | | | |
| • Site-built. | | P | P | C |
| • Manufactured. | | P | P | |
| • Single-family cluster. (13) | | C | C | C |
| Multifamily Dwellings: (1) | | | | |
| • Multifamily apartments. | | P | P | C |
| • Transitional/supportive housing. | | P | P | C |
| • Condominium, stock cooperative, community apartments. (2) | | C | C | C |
| Mobilehome Park: (3) | | | | |
| • Undivided ownership. | P | | | |
| • Condominium or planned unit development ownership. | C | | | C |
| Group Quarters: | | | | |
| • Convent, rectory, roominghouse, dormitory, fraternity or sorority house, etc. | | C | C | |
| Transient Quarters: (See Division 5, Commercial Uses—Tourist Services.) | | | | |
| Community Residential Care: | | | | |
| • Small group care home. | | P | P | P |
| • Other community residential care facility. | | C | C | |
| Residential Accessory Uses: | | | | |

ORDINANCE NO. 1675
Page 19

Table 19.412.010

USES PERMITTED—MULTIFAMILY RESIDENTIAL ZONES

| Uses | Residential Zones | | | |
|---|---|---|---|---|
| | RMH | RM-10 | RM-20 | PD (12) |
| • Accessory dwelling unit. (17) | | P | P | P |
| • Guesthouse. | | | | |
| • Home occupation. (4) | P | P | P | P |
| • Short-term rental. (18) | I | I | I | I |
| • Animal keeping. (5) | P | P | P | P |
| • Swimming pool, therapeutic pool, recreational structure. | P | P | P | P |
| • Clubhouse, meeting room, game room, gymnasium, sauna, health center (private use only). | I | I | I | C |
| • Rental management office, storage room. | I | I | I | I |
| • Parking, within garage. | P | P | P | P |
| • Parking, under carport. | P | P | P | P |
| • Parking, uncovered. | P | P | P | P |
| • Yard sale. (6) | P | P | P | P |
| **Public Service Uses** | | | | |
| Community Day Care: | | | | |
| • Small group child day care home (1-14 children). (15) | | P | P | P |
| • Small group adult day care home (1-6 adults). | | P | P | P |
| • Child day care center. (7) | | Ci | Ci | Ci |
| • Adult day care center. (7) | | Ci | Ci | Ci |
| Health Facilities: | | | | |
| • Long-term care (intermediate care or skilled nursing). | | C | C | |

ORDINANCE NO. 1675
Page 20

Table 19.412.010

USES PERMITTED—MULTIFAMILY RESIDENTIAL ZONES

| Uses | Residential Zones | | | |
|---|---|---|---|---|
| | RMH | RM-10 | RM-20 | PD (12) |
| Public Assembly: (See also Recreation.) | | | | |
| • Church. (8), (9) | | C | C | |
| • Emergency shelter. (16) | | I | I | |
| Education: | | | | |
| • Educational institution. (9) | | C | C | |
| Recreation: | | | | |
| • Public park, public playground, public recreational area, public landscaped open space, public-owned historical site or feature. | | P | P | P |
| • Community recreation center. | | P | P | C |
| Utilities and Communications: (14) | | | | |
| • Aviation navigational aids. | C | C | C | C |
| • Public utility facilities or structures, including electrical substations and cellular telephone facilities. | C | C | C | |
| Transportation: | | | | |
| • Parking lot. | | C | C | C |
| • Parking structure. | | C | C | C |
| **Temporary Uses** | | | | |
| • On-site construction facilities. (10) | P | P | P | P |
| • On-site real estate sales office. (11) | P | P | P | P |

ORDINANCE NO. 1675
Page 21

Notes:

1   See also "Architectural Design Guidelines for Multifamily Low and Medium Density Residential Developments" in a separate document adopted by Resolution # 8934.

2   Special requirements apply. See Section 19.448.030.

3   Special requirements apply for mobile home parks. See Section 19.448.020.

4   Special requirements apply for home occupations. See Section 19.448.040.

5   Special requirements apply for animal keeping. See Section 19.448.060.

6   Special requirements apply for yard sales. See Section 19.448.050.

7   Permitted with a conditional use permit as an incidental use provided that sufficient parking and circulation can be provided on the property and the hours of operation for the incidental use will not conflict with the primary use.

8   In all residential zones in which churches are permitted, such churches shall be located on and oriented to major, primary, or secondary highway as defined and as designated in the Buena Park General Plan.

9   Bingo games shall be permitted as an accessory use only when authorized under Chapter 5.16 et seq., and only when fire and safety regulations are met and parking facilities are fully conforming to the requirements for public assembly use.

10  Offices, storage, activities, and facilities directly pertaining to construction for a permitted use on the same site provided construction is not suspended for more than 30 consecutive days.

11  Temporary real estate sales office, only for sales or leasing of new subdivision, and for not more than 1 year.

12  Permitted uses and intensity of use in the PD zone shall be determined in a public hearing, subject to the provisions of the General Plan for the individual area designated as Planned Development.

13  Special requirements apply for single family cluster developments. See Section 19.448.035.

14  See Division 12 of Zoning Ordinance.

15  All applicants shall comply with the State Health and Safety Code with regard to the maximum number of children that may be supervised at any 1 time based on applicable standards and criteria. In no case, shall the total number of children supervised at any 1 time at any residence exceed 14.

16  Special requirements apply for emergency shelters. See Section 19.448.070.

ORDINANCE NO. 1675
Page 22

17 As an accessory to single family dwelling.  Special requirements apply for accessory dwelling units. See Section 19.348.010.

18 <u>As incidental to a single family dwelling only.  Special requirements apply for short-term rental units. See Section 19.448.080.</u>

<u>SECTION 5.</u>   Section 19.448 Special Requirements for Certain Uses of Title 19 of the Buena Park Municipal Code is hereby amended to read as follows:


19.448.080 RESIDENTIAL SHORT-TERM RENTALS

<u>Refer to Section 19.348.080 of Title 19. of the Buena Park Municipal Code.</u>


SECTION 6.   The City Council hereby finds that this Zoning Text Amendment No. C19-2 is statutorily exempt from California Environmental Quality Act review pursuant to sections 15060(c)(2), 15060(c)(3), 15061(b)(3), and 15301 of the State CEQA guidelines, because it will not result in a direct or reasonably foreseeable indirect physical change in the environment, because it involves operation, permitting, licensing, and/or leasing of existing private structures or facilities involving negligible or no expansion of existing or former use, because there is no possibility that it may have a significant effect on the environment, because it is not a project, as defined in section 15378 of the CEQA guidelines, of the Public Resources Code, of the California Code of Regulations.

<u>SECTION 7.</u>   Severability.  The City Council declares that, should any provision, section, paragraph, sentence, or word of this Ordinance be rendered or declared invalid by any final court action in a court of competent jurisdiction, or by reason of any preemptive legislation, the remaining provisions, sections, paragraphs, sentences and words of this Ordinance shall remain in full force and effect.

<u>SECTION 8.</u>   The City Clerk shall certify to the adoption of this Ordinance.


PASSED AND ADOPTED this 14th day of January 2020, by the following called vote:

AYES:       COUNCILMEMBERS:  Brown, Traut, Park, Swift, Smith

NOES:       COUNCILMEMBERS:  None

ABSENT:    COUNCILMEMBERS:  None

ABSTAIN:   COUNCILMEMBERS:  None

ORDINANCE NO. 1675
Page 23

Mayor

ATTEST:

City Clerk

I, Adria M. Jimenez, MMC, City Clerk of the City of Buena Park, California, do hereby certify that the foregoing ordinance was introduced and passed at a regular meeting of the City Council of the City of Buena Park held on the 14th day of January 2020.

City Clerk